IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ELEMENTS OF HOSPITALITY, INC., | ) Civil No. 24-00214 JMS-KJM |
| | ) |
| | ) FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) REGARDING PLAINTIFF ELEMENTS |
| | ) OF HOSPITALITY, INC.'S MOTION |
| vs. | ) FOR DEFAULT JUDGMENT |
| | ) |
| OAHU ELECTRICAL SERVICES, | ) |
| LLC; GAURA JOHNSON; JOHN | ) |
| DOES 1–10; JANE DOES 1–10; DOE | ) |
| CORPORATIONS 1–10; DOE | ) |
| PARTNERSHIPS 1–10; DOE | ) |
| ENTITIES 1–10; and DOE | ) |
| GOVERNMENT ENTITIES 1–10, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF
ELEMENTS OF HOSPITALITY, INC.'S MOTION FOR DEFAULT JUDGMENT

On September 30, 2024, Plaintiff Elements of Hospitality, Inc. ("Plaintiff"),

filed a Motion for Default Judgment ("Motion").  ECF No. 25.  Defendants Oahu

Electrical Services, LLC ("Defendant OES"), and Gaura Johnson ("Defendant

Johnson") (collectively, "Defendants") did not file a written response to the

Motion.

On November 13, 2024, the Court held a hearing on the Motion.  ECF

No. 29.  David A. Imanaka, Esq. ("Mr. Imanaka"), appeared on behalf of Plaintiff.

Defendant Johnson appeared pro se and asked the Court to continue the hearing on

the Motion to allow Defendant Johnson time to retain counsel.  Over Plaintiff's objection, the Court granted Defendant Johnson's request and continued the hearing on the Motion to December 18, 2024.  The Court cautioned Defendant Johnson that failure to comply with the instructions given at the hearing could result in the Court ruling on the Motion and allowing Plaintiff to supplement its request for attorneys' fees.

On December 18, 2024, the Court held a further hearing on the Motion. ECF No. 31.  Mr. Imanaka appeared on behalf of Plaintiff.  Defendant Johnson again appeared pro se.  Defendant Johnson informed the Court that he had not retained counsel for this case but had filed for individual bankruptcy.  The Court granted Plaintiff's request to file a supplement regarding its request for attorneys' fees.  On December 31, 2024, Plaintiff timely filed this supplement in the form of a declaration from counsel, Harvey J. Lung, Esq.  ECF No. 32.

On December 18, 2024, Defendant Johnson's bankruptcy counsel filed a Notice of Bankruptcy Filing by Defendant(s) Gaura Johnson.  ECF No. 30.  The Court has independently confirmed that Defendant Johnson filed for Chapter 7 bankruptcy and takes judicial notice of that proceeding, *In re Gaura Johnson*, Bankr. Pet. No. 24-011378 (Bankr. D. Haw.).  In light of Defendant Johnson's pending bankruptcy proceeding, an automatic stay applies to him pursuant to 11 U.S.C. § 362.  The Court thus FINDS AND RECOMMENDS that the district court

DEFER ruling on the Motion as to Plaintiff's requests for relief against Defendant Johnson.

A stay under § 362, however, does not automatically apply to other defendants.  *See, e.g.*, *Ingersoll-Rand Fin. Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir. 1987).  The Court thus finds that Defendant Johnson's pending bankruptcy proceeding does not preclude a ruling on the Motion as to Plaintiff's requests for relief against Defendant OES.

After carefully considering the Motion, applicable law, record in this case, and argument of counsel, the Court FINDS AND RECOMMENDS that the district court GRANT IN PART AND DENY IN PART the Motion as to Defendant OES for the reasons set forth below.

BACKGROUND

Plaintiff is a general contractor licensed to do business in Hawaii.  ECF No. 1 at 3 ¶ 8.  Defendant OES is also licensed to do business in Hawaii and provides "electrical contractor services for commercial and residential properties."  *Id.* at 4 ¶ 9–10.  Defendant Johnson is Defendant's OES' chief executive officer and responsible managing employee.  *Id.* ¶ 11.

Plaintiff entered into a prime contract agreement with HPTMI Hawaii, Inc., to renovate the Royal Sonesta Restaurant (the "Project").  *Id.* ¶ 13.  Plaintiff subsequently entered into a subcontract agreement with Defendant OES regarding

3

the Project (the "Subcontract"). *Id.* ¶ 14. The Subcontract provided, among other things, that Plaintiff would pay $1,016,772 for Defendant OES to provide electrical contracting services on the Project. *Id.* at 4–5 ¶ 14.

Plaintiff alleges that Defendant OES breached the Subcontract by failing to complete its scope of work on the Project and "failing to comply with other provisions and requirements of the Subcontract." *Id.* at 6 ¶ 16. Plaintiff also alleges that Defendant OES "misappropriated Project funds by applying for and accepting payment from [Plaintiff] for the purpose of procuring materials, equipment, and fixtures for the Project which [Defendant OES] ultimately did not procure without excuse or justification." *Id.* at 6–7 ¶ 17.

Plaintiff alleges that, at some point during the Project, Defendant OES stated to Plaintiff that Defendant OES intended to declare bankruptcy and was unable to fulfill its obligations under the Subcontract. *Id.* at 7 ¶ 20. By letter dated March 4, 2024, in accordance with the terms of the Subcontract, Plaintiff notified Defendant OES that it was terminating the Subcontract for cause based on Defendant OES' statements and misappropriation of Project funds. *Id.* at 7–8 ¶ 21. Plaintiff alleges that because Defendant OES defaulted on its obligations under the Subcontract, Plaintiff had to retain a new subcontractor to complete Defendant OES' scope of work on the Project. *Id.* at 7 ¶ 19.

4

On May 8, 2024, Plaintiff filed this action.  Plaintiff asserts the following claims against Defendants:  (1) Count I—Breach of Contract; (2) Count II—Breach of the Covenant of Good Faith and Fair Dealing; (3) Count III—Unjust Enrichment/Quantum Meruit; (4) Count IV—Promissory Estoppel/Detrimental Reliance; (5) Count V—Negligent Misrepresentation; (6) Count VI—Intentional Misrepresentation; (7) Count VII—Conversion; (8) Count VIII—Piercing the Corporate Veil/Alter Ego; (9) Count IX—Declaratory Relief; and (10) Count X—Injunctive Relief.

Plaintiff served Defendants with the Complaint and Summonses on July 12, 2024.  ECF No. 20-1 at 3–4 ¶ 10.  On August 28, 2024, pursuant to Plaintiff's request, the Clerk of Court entered default against Defendants.  ECF Nos. 21, 23. On September 30, 2024, Plaintiff file the instant Motion seeking default judgment "on all counts of its Complaint" against Defendants.  ECF No. 25 at 2.

## DISCUSSION

### I. Jurisdiction

Before considering the merits of a request for default judgment, the Court has an affirmative obligation to determine whether it has subject matter jurisdiction over this action and personal jurisdiction over Defendants.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be

successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").

Plaintiff asserts that there is subject-matter jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  ECF No. 1 at 3 ¶ 5.  Federal district courts have original jurisdiction over cases where the amount in controversy exceeds $75,000, exclusive of interest and costs, and where the matter in controversy is between citizens of different states.  *See* 28 U.S.C. § 1332(a)(1).  Complete diversity of citizenship requires that each of the plaintiffs be a citizen of a different state than each of the defendants.  *See Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1025 (9th Cir. 2007) (citing 28 U.S.C. § 1332; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citation omitted).

Plaintiff asserts that the amount in controversy exceeds $75,000.  ECF No. 1 at 3 ¶ 5.  Plaintiff also asserts that it is a Washington corporation with its principal place of business in Washington.  *Id.* at 2 ¶ 1; ECF No. 34 at 3 (citations omitted).  Plaintiff is, therefore, a citizen of Washington.  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citing 28 U.S.C. § 1332(c)(1)) (stating that a corporation is a citizen of the state (1) in which it is incorporated, and (2) where its principal place of business is located).

6

Plaintiff asserts that Defendant OES is a limited liability company, the only member of which is Defendant Johnson.  ECF No. 34 at 3 (citations omitted). Plaintiff asserts that Defendant Johnson is domiciled in Hawaii.  *Id.* at 3–4.  Based on Plaintiff's assertions, Defendant OES and Defendant Johnson are citizens of Hawaii.  *Johnson*, 437 F.3d at 899 (stating that a limited liability company shares the citizenships of all of its owners/members); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (stating that a person's citizenship is determined by his state of domicile).

Based on the foregoing, the Court finds that subject-matter jurisdiction exists over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

The Court has personal jurisdiction over Defendants.  Personal jurisdiction can be acquired by, among other things, personal service.  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604 (1990)).  The record reflects that Plaintiff effected service on Defendants in accordance with the Federal Rules of Civil Procedure.  ECF No. 20.

Based on the foregoing, the Court finds that it has jurisdiction to consider the Motion.

7

II.     Default Judgment

Federal Rule of Civil Procedure 55 governs the two-step process for obtaining default judgment.  First, the moving party must seek an entry of default from the clerk of court.  Fed. R. Civ. P. 55(a).  Here, Plaintiff has satisfied the first step by obtaining entry of default as to Defendant OES.  ECF Nos. 12, 13.

After the clerk enters default, a party must separately seek entry of default judgment from the court in accordance with Rule 55(b).  Fed. R. Civ. P. 55(b)(2). The granting or denial of a motion for default judgment is within the discretion of the court.  *See Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986).

The Ninth Circuit has enumerated factors that courts should consider in determining whether to grant default judgment:

(1)     the possibility of prejudice to the plaintiff;

(2)     the merits of the plaintiff's substantive claim;

(3)     the sufficiency of the complaint;

(4)     the sum of money at stake in the action;

(5)     the possibility of a dispute concerning material facts;

(6)     whether the default was due to excusable neglect; and

(7)     the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*See Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986).

A.    Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C. D. Cal. 2002). Here, Defendant OES failed to answer or respond to the Complaint and the Motion. Absent entry of default judgment, Plaintiff would be without recourse for the losses it sustained on the Project because of Defendant OES' actions and omissions. Accordingly, the Court finds that the first *Eitel* factor weighs in favor of default judgment.

B.    Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiff's claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. These factors are often analyzed together and considered to be "the most important." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citations omitted).

These factors require courts to determine whether a plaintiff has "state[d] a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

9

"[W]here the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *Adobe Sys., Inc. v. Tilley*, No. C 09–1085 PJH, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010) (citing *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  With the exception of facts related to the amount of damages, courts must take as true all factual allegations pled in the complaint. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citation omitted).

### 1.    Count I—Breach of Contract

Plaintiff attaches a copy of the Subcontract to the Motion.  ECF No. 25-3. As an initial matter, the Court addresses whether it can consider extrinsic evidence in ruling on the Motion.

On one hand, "[s]ome courts have held assessment of liability on default judgment must be limited to the four corners of the complaint." *United States v. Bayley*, CASE NO. 3:20-cv-05867-DGE, 2023 WL 3093126, at *6 n.4 (W.D. Wash. Apr. 26, 2023) (citing *Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 2:15-CV-12082, 2016 WL 5402962, at *5 (E.D. Mich. Sept. 27, 2016) (collecting cases)).  "These courts have reasoned 'a defendant should be able to review a complaint, and, if it is confident that the complaint fails to state a claim for relief, elect to conserve its resources and not defend the case.'"  *Id.* (quoting *Ayers*, 2016

10

WL 5402962, at *5).  And although courts may consider documents attached to and incorporated by reference as part of the pleading, Plaintiff neither attached nor incorporated by reference the Subcontract in the Complaint.  *See Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 878 n.3 (S.D. Cal. 2021) (other citations omitted) (citing Fed. R. Civ. P. 10(c) ("A copy o f a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Rule 55(b)(2)(C), on the other hand, expressly permits courts considering a motion for default judgment to conduct hearings when necessary to "establish the truth of any allegation by evidence."  Fed. R. Civ. P. 55(b)(2)(C).  Following the plain language of the rule, in a well-reasoned opinion, the Fifth Circuit Court of Appeals considered the issue and approved the taking of additional evidence to "prove-up" or "flesh out" minimal factual allegations from the complaint.  *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490 (5th Cir. 2015).

In *Wooten*, the plaintiff asserted claims against the defendant, his former employer, for discrimination and retaliation under the Age Discrimination in Employment Act.  *Id.* at 493.  The plaintiff filed a motion for default judgment, and the district court held a hearing on this motion "to prove up damages."  *Id.* at 494.  At the hearing, the plaintiff also "provided testimony that elaborated on his factual allegations."  *Id.*  The district court granted the plaintiff's motion for default judgment.  *Id.* at 495.

On appeal, the Fifth Circuit considered, among other things, whether the plaintiff's complaint, "either standing alone or considered together with his testimony at the hearing, supplied an adequate foundation for the default judgment." *Id.* at 497. The Fifth Circuit found that despite being "light on factual details," the plaintiff's complaint was sufficient to satisfy the pleading requirements under Federal Rule of Civil Procedure 8. *Id.* at 497–99. The Fifth Circuit also noted that the plaintiff's testimony "simply added factual details that fleshed out his claim." *Id.* at 500. The Fifth Circuit stated that it thus had "little difficulty concluding that the evidence received at the damages prove-up hearing served a permissible purpose under Rule 55(b)(2)—to 'establish the truth of any allegation by evidence' or 'investigate any other matter' . . . ." *Id.*

The Court adopts the Fifth Circuit's approach in *Wooten* here. After carefully reviewing the Complaint, the Court finds that it sufficiently states a plausible claim for breach of contract in accordance with Rule 8, as discussed in detail below. The Court also finds it appropriate to consider extrinsic evidence to the extent such evidence adds factual details that flesh out Plaintiff's claims and serves the permissible purpose set forth in Rule 55(b)(2)(C).

Moreover, in *Ayers* and *Bayley*, the district courts found it appropriate to consider extrinsic evidence because the defendants were served with copies of the motions for default judgment and had an opportunity to respond to the assertions

12

therein. *Bayley*, 2023 WL 3093126, at *6 n.4; *Ayers*, 2016 WL 5402962, at *5.

Although the record does not indicate whether Plaintiff served Defendants with a

copy of the Motion, the Court notes that Plaintiff was not under an obligation to do

so. *See* Fed. R. Civ. P. 5(a)(2) (stating that service of filed documents is not

required "on a party who is in default for failing to appear"). In any case, on

October 3, 2024, the Court ordered Plaintiff to serve Defendants with a copy of the

entering order setting the hearing date and briefing schedule for the Motion

("10/03/2024 EO"). ECF No. 26. On October 10, 2024, Plaintiff served

Defendants by mail with copies of the 10/03/2024 EO. ECF No. 28. If Defendant

OES believed that Plaintiff's allegations were inadequate to state a claim for relief,

it could have responded to the Complaint or the Motion. *See Wooten*, 788 F.3d at

500; *Bayley*, 2023 WL 3093126, at *6 n.4; *Ayers*, 2016 WL 5402962, at *5.

Defendant Johnson appeared at the initial hearing on the Motion on

November 13, 2024, which indicates that he received, read, and understood the

10/03/2024 EO and could have responded to the Motion. ECF No. 29. The Court

notes that Defendant Johnson again appeared at the continued hearing on the

Motion on December 18, 2024, without taking the opportunity to substantively

respond to the Motion. ECF No. 31. The Court thus finds it appropriate to

consider the extrinsic evidence Plaintiff submitted with the Motion in assessing

Plaintiff's breach of contract claim.

13

To prevail on a breach of contract claim, a plaintiff must show that: (1) the contract was valid; (2) he performed under the contract; (3) the defendants failed to perform; (4) the defendants' failure was the proximate cause of his injury; and (5) his damages were the nature and extent reasonably foreseeable by the defendants when the parties entered into the contract. *Calipjo v. Purdy*, 144 Haw. 266, 273, 439 P.3d 218, 225 (2019). The Court finds that Plaintiff satisfies the five foregoing requirements for its breach of contract claim against Defendant OES.

i.    The Subcontract Is a Valid Contract

Plaintiff sufficiently alleges that the Subcontract is a valid contract. ECF No. 1 at 4–5 ¶ 14, 8 ¶ 24. Hawaii law requires four elements for a valid contract: (1) capacity, (2) offer, (3) acceptance, and (4) consideration. *See Calipjo*, 144 Haw. at 273, 439 P.2d at 225.

The first element, capacity, is satisfied because the Subcontract was signed by Blake Aragon, who, as the Subcontract itself states, was authorized to sign for Defendant OES. ECF No. 25-3 at 14.

As to the second and third elements, offer and acceptance, "[t]here must be a mutual assent or a meeting of the minds on all essential elements or terms . . . ." *Earl M. Jorgensen Co. v. Mark Const., Inc.*, 56 Haw. 466, 470, 540 P.2d 978, 982 (1975) (citations omitted). Mutual assent can be objectively deduced from the parties' "language or by implication from their conduct and the surrounding

14

relevant circumstances." *Id.* at 470, 540 P.2d at 982. Here, the Court finds that

there was mutual assent between Plaintiff and Defendant OES regarding the

essential terms of the Subcontract and that those terms were sufficiently definite.

The Subcontract clearly sets forth the essential terms of the parties' agreement,

including "the respective duties and obligations of both [Plaintiff and Defendant

OES] on the Project." ECF No. 1 at 5 ¶ 14; *see also generally* ECF No. 25-3. The

Court thus finds that there was a valid offer for and acceptance of the Subcontract.

As to the fourth element, consideration is "a bargained for exchange

whereby the promisor receives some benefit or the promisee suffers a detriment."

*Calipjo*, 144 Haw. at 280–81, 439 P.2d at 232–33 (citation omitted). Here,

Plaintiff agreed to pay $1,016,772 in exchange for Defendant OES' electrical

contracting services on the Project. ECF No. 1 at 4–5 ¶ 14. The Court thus finds

that Plaintiff sufficiently alleges the third element, consideration. Based on the

foregoing, the Court finds that the Subcontract is a valid contract.

ii.    Plaintiff Performed Under the Subcontract

Plaintiff alleges that Defendant OES applied for and accepted payment from

Plaintiff "for the purpose of procuring materials, equipment, and fixtures for the

Project. . . ." ECF No. 1 at 6–7 ¶ 17; *see also id.* at 8 ¶ 25. The Court interprets

this allegation to mean that Plaintiff paid Defendant OES for materials and services

used for the Project, pursuant to the terms of the Subcontract. Plaintiff also alleges

that it abided by the terms of the Subcontract when it notified Defendant OES of the termination of the Subcontract.  *Id.* 7–8 at ¶ 21.  The Court thus finds that Plaintiff performed under the Subcontract.

### iii.    Defendant OES Failed to Perform Under the Subcontract

Plaintiff alleges that Defendant OES breached the Subcontract by:  "failing to complete its scope of work under the Subcontract; failing to procure and deliver materials, equipment, and fixtures to the Project; abandoning performance of its scope of work under the Subcontract; and for failing to comply with other provisions and requirements of the Subcontract."  *Id.* at 6 ¶ 16.  Plaintiff also alleges that Defendant OES "misappropriated Project funds by applying for and accepting payment from [Plaintiff] for the purpose of procuring materials, equipment, and fixtures for the Project which [Defendant OES] ultimately did not procure without excuse or justification."  *Id.* at 6–7 ¶ 17.  Despite telling Plaintiff that it intended to declare bankruptcy, Defendant OES did not file for bankruptcy. *Id.* at 7 ¶ 20.  Nor did Defendant OES resume performance of the Subcontract or refund the funds applied for and received from Plaintiff.  *Id.*

Based on the foregoing, the Court finds that Defendant OES failed to perform under the Subcontract.

iv.    Defendant OES' Failure Was the Proximate Cause of
Plaintiff's Injuries

The Complaint sufficiently alleges that Defendant OES' failure to perform

under the Subcontract was the proximate cause of Plaintiff's alleged damages.

Because of Defendant OES' default of its obligations under the Subcontract,

Plaintiff "was forced to retain an alternate subcontractor to complete performance

of the Subcontract for a contract price substantially higher than" the Subcontract

price. *Id.* at 7 ¶ 19.  In addition, Plaintiff alleges that Defendant OES never

refunded payments that Plaintiff made to Defendant OES for materials, equipment,

and fixtures for the Project, though Defendant OES never procured such materials,

equipment, and fixtures. *Id.* at ¶ 18.

v.    Plaintiff's Damages Were Reasonably Foreseeable at the
Time the Parties Entered into the Subcontract

Defendant OES' obligations for the Project were explicitly stated in the

Subcontract.  *Id.* at 5–6 ¶ 15(a)–(c).  Plaintiff's damages were caused by Defendant

OES' failure to satisfy those obligations, such as having to retain an alternate

subcontractor for a substantially higher price.  Such damages were reasonably

foreseeable at the time the parties entered into the Subcontract.

Based on the foregoing, the Court finds that Plaintiff satisfies all five

requirements to state a plausible claim for breach of contract against Defendant

OES.  The Court thus finds that the second and third *Eitel* factors, the merits of the

17

claim and the sufficiency of the complaint's allegations, weigh in favor of default

judgment on Count I for breach of contract.

>    2.    Plaintiff's Remaining Claims Against Defendant OES

Aside from Count I, the only other claim Plaintiff briefs in its memorandum

in support of the Motion is Count VIII, a claim to pierce the corporate veil of

Defendant OES.  ECF No. 25 at 19–21.  Given that the goal of Plaintiff's "pierce

the corporate veil" claim is to hold Defendant Johnson jointly and severally liable,

the Court construes this claim as seeking relief against Defendant Johnson, not

Defendant OES.  Thus, in light of Defendant Johnson's pending bankruptcy

proceeding and resulting broad, automatic stay under § 362, the Court recommends

that the district court defer ruling on this claim.  *See Porter v. Nabors Drilling*

*USA, L.P.*, 854 F.3d 1057, 1061 (9th Cir. 2017) ("The sweep of the automatic stay

is broad and serves as one of the most important protections in bankruptcy law."

(citations and internal quotation marks omitted)).

In a footnote of its memorandum in support of the Motion, Plaintiff asserts:

"Plaintiff has elected to pursue its legal claims in lieu of its claim in equity."  ECF

No. 25 at 17 n.2.  Plaintiff does not brief which claims it asserts are legal versus

equitable.

At the November 13, 2024 hearing on the Motion, the Court noted to

Plaintiff's counsel that it is unclear from the Motion for which counts Plaintiff

seeks default judgment, other than Counts I and VIII.  In response, Plaintiff's

counsel clarified that Plaintiff is seeking default judgment on all claims in the

Complaint.  As the Court also noted to Plaintiff's counsel at the hearing, however,

Plaintiff does not explain in the memorandum in support of the Motion why it is

entitled to default judgment as to the remaining claims in the Complaint.  Plaintiff

thus fails to demonstrate that the second and third *Eitel* factors weigh in favor of

default judgment as to Counts II through X.

    C.    Sum of Money at Stake

The fourth *Eitel* factor requires courts to consider "the amount of money at

stake in relation to the seriousness of [the defendant's] conduct."  *PepsiCo, Inc.*,

238 F. Supp. 2d at 1176.  Plaintiff seeks $728,678.45 in special damages and

$25,936.62 in attorneys' fees and costs.  The Court finds that Plaintiff's damages

request is specifically tailored to Defendant OES' acts and omissions, *i.e.*, its

failure to perform is obligations under the Subcontract.  Because the amount of

money at stake in relation to the seriousness of Defendant OES' wrongful conduct

is reasonable, this factor weighs in favor of default judgment.

    D.    Likelihood of a Dispute Concerning Material Facts

The fifth *Eitel* factor requires courts to consider "the possibility of dispute as

to any material facts in the case."  *Id.* at 1177.  Here, Defendant OES received

notice of the Complaint and the Motion.  Defendant OES' only member,

Defendant Johnson, appeared at two hearings on the Motion.  ECF Nos. 29, 31.

Defendants had a fair opportunity to defend this action and respond to the Motion,

yet took no steps to do so.  Thus, because the well-pled allegations in the

Complaint are undisputed, the Court finds that the fifth *Eitel* factor weighs in favor

of default judgment.

      E.      Whether Default was Due to Excusable Neglect

     The sixth *Eitel* factor considers whether the defendant's default is due to

excusable neglect.  *Eitel*, 782 F.2d at 1472.  If a defendant is "properly served with

the complaint, the notice of entry of default, as well as the papers in support of the

instant motion," the default "cannot be attributed to excusable neglect."  *Shanghai*

*Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

     As previously stated, Plaintiff served Defendant OES with the Complaint

and a copy of the 10/03/2024 EO.  At the first hearing on the Motion on

November 13, 2024, Defendant Johnson indicated his intent to retain counsel for

himself and Defendant OES and defend this action.  The Court cautioned

Defendant Johnson that failure to comply with instructions could result in the entry

of default judgment against Defendant OES and/or Defendant Johnson.  Despite

this warning, Defendant Johnson did not retain counsel for Defendant OES.

     The record in this case indicates that Defendant OES' default was not due to

excusable neglect, but rather Defendant OES' conscious and willful decision not to

defend the action.  The Court thus finds that the sixth *Eitel* factor weighs in favor of default judgment.

F.    Policy Favoring Decisions on the Merits

Default judgments are ordinarily disfavored, and cases should be decided on their merits whenever reasonably possible.  *Eitel*, 782 F.2d at 1472 (citation omitted).  Defendant OES' default, however, renders a decision on the merits impractical, if not impossible.  Defendant OES has not complied with any case deadlines or defended against Plaintiff's claims.  Because Defendant OES has not been responsive, this case cannot move forward.

Under Rule 55(a), "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  In addition, the mere existence of Rule 55(b) indicates that that the policy to decide cases on the merits is not alone dispositive.  *Id.*  Thus, this factor does not preclude the Court from entering default judgment against Defendants.

G.    Totality of Default Judgment Factors

Upon review of the *Eitel* factors, this Court finds that the totality of the *Eitel* factors weigh in favor of entering default judgment against Defendant OES as to Count I.  The Court also finds, however, that the totality of the *Eitel* factors do not weigh in favor of entering default judgment as to Counts II through X.  This

Court thus recommends that the district court enter default judgment in Plaintiff's favor and against Defendant OES as to Count I, but deny default judgment as to Counts II through X.

III.    Damages

Although Plaintiff's allegations regarding liability are taken as true, Plaintiff must provide proof of damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The Court finds that Plaintiff has established damages for Defendant OES' breach of the Subcontract as set forth below.

"Contract law is designed to enforce the expectancy interests created by agreement between the parties[.]" *Kawakami v. Kahala Hotel Invs., LLC*, 142 Haw. 507, 513, 421 P.3d 1277, 1283 (2018) (alterations in original) (other citations omitted) (quoting *Ass'n of Apartment Owners of Newton Meadows ex rel. Its Bd. of Dirs. v. Venture 15, Inc.*, 115 Haw. 232, 291, 167 P.3d 225, 284 (2007)) (citing Restatement (Second) of Contracts § 347 cmt. a (Am. Law. Ins. 1981) (stating that contract-based damages ordinarily center on "the injured party's expectation interest")). "Thus, contract damages generally attempt to give the injured party 'the benefit of the bargain' by awarding a sum of money that will, to the extent possible, put the injured party 'in as good a position as he [or she] would have been in had the contract been performed.'" *Id.* at 514, 421 P.3d at 1284 (quoting

22

Restatement (Second) of Contracts § 347 cmt. a)) (citing Restatement (Second) of

Contracts § 344(a)).

Here, when Defendant OES abandoned its work on the Project, Plaintiff had

to retain new subcontractors to (1) remediate the deficiencies in Defendant OES'

completed work and (2) complete Defendant OES' scope of work on the Project.

ECF No. 25 at 23–24.  Plaintiff also had to pay a materials supplier when

Defendant OES failed to do so, despite applying for and receiving funds from

Plaintiff for these materials.  *Id.* at 14 (citations omitted).  Plaintiff requests

$728,678.45 in damages, which represents the amounts Plaintiff paid to the

materials supplier and the new subcontractors, less amounts Plaintiff retained from

Defendant OES pursuant to the Subcontract.  The Court addresses each item in

turn below.

A.    Materials Supplier

Plaintiff asserts that Defendant OES applied for and received advanced

payments from Plaintiff to order and pay for materials for the Project from supplier

Vibrance Hawaii ("Vibrance").  ECF No. 25 at 14 (citing ECF No. 25-1 at 5 ¶ 22).

After Defendant OES abandoned the Project, Plaintiff learned that despite

receiving funds from Plaintiff, Defendant OES failed to pay Vibrance for the

materials.  *Id.* (citing ECF No. 25-1 at 5 ¶ 22).

Plaintiff asserts that it directly paid Vibrance $174,024.66 that it would not have paid otherwise but for Defendant OES' diversion of funds.  ECF No. 25 at 15. To give Plaintiff the benefit of the bargain, any damages award should put Plaintiff in as good a position as it would have been had Defendant OES performed under the Subcontract, *i.e.*, not improperly diverted funds.  *See Kawakami*, 142 Haw. at 514, 421 P.3d at 1284.  The Court thus finds that Plaintiff is entitled to recover amounts paid directly to Vibrance.

The Court has carefully reviewed Plaintiff's invoices from Vibrance.  ECF No. 25-11.  The Court recommends that the district court award Plaintiff $174,024.66 for amounts paid directly to Vibrance for materials.

B.    New Subcontractors

1.    Coconut Coast Electric, Inc.

Plaintiff retained Coconut Coast Electric, Inc. ("Coconut") to (1) remediate Defendant OES' deficient work and (2) complete the remaining scope of work for the Project.  ECF No. 25 at 14.  Plaintiff submits invoices establishing that it paid Coconut $531,999.92 for the remediation work.  ECF No. 25-1 at 3–4 ¶¶ 13–14; ECF No. 25-10.  Had Defendant OES adequately completed its work on the Project in accordance with the terms of the Subcontract, Plaintiff would not have needed to retain Coconut.  The Court thus finds that Plaintiff is entitled to recover the $531,999.92 paid to Coconut for remediation work.

24

In addition, Plaintiff entered into a new subcontract with Coconut, whereby Plaintiff agreed to pay $309,420.82 for Coconut to complete Defendant OES' remaining scope for the Project ("Coconut Subcontract"). ECF No. 25-7. Plaintiff states that work on this portion of the Project is still ongoing. ECF No. 25-1 at 4 ¶ 16. Plaintiff contends that, as of the filing of the Motion, $235,000 has been billed, and Plaintiff "anticipates that the full value of the [Coconut Subcontract] will be incurred, if not more." ECF No. 25 at 14 n.1 (citing ECF No. 25-1 at 4 ¶ 17); *see also* ECF No. 25-1 at 4 ¶ 16.

Had Defendant OES completed its entire scope of work under the Subcontract, there would have been no need for Plaintiff to incur the expense of retaining Coconut. The Court thus finds that Plaintiff is entitled to recover the Coconut Subcontract price, $309,420.82. *See* Restatement (Second) of Contracts § 347 cmt. a ("In some situations the sum awarded [can accomplish the goals of contract damages;] for example, where the injured party has simply had to pay an additional amount to arrange a substitute transaction and can be adequately compensated by damages based on that amount.").

The Court notes that, although Plaintiff did not substantively brief the issue, Plaintiff is entitled to the full amount of the Coconut Subcontract, and not limited to the $235,000 billed to date. Because Defendant OES abandoned the Project, Plaintiff incurred a contractual obligation to Coconut. The Coconut Subcontract

price is certain and not speculative.  The Court finds that this $309,420.82 amount,

though not yet fully paid, is the amount needed to protect Plaintiff's expectancy

interests.  *See Kawakami*, 142 Haw. at 513, 421 P.3d at 1283.

      2.    EK AV LLC

Plaintiff retained EK AV LLC ("EKAV") to remediate Defendant OES'

deficient work on the Project.  ECF No. 25-1 at 4 ¶ 18.  Plaintiff submits invoices

establishing that it paid EKAV $52,655.43 for this remediation work.  ECF No. 25-

8.  For the same reasons set forth above, the Court finds that Plaintiff is entitled to

recover the $52,655.43 paid to EKAV for remediation work.

      C.    Payments Plaintiff Withheld from Defendant OES

Pursuant to the terms of the Subcontract, Plaintiff withheld 10% of each

payment to Defendant OES for the Project, "to be paid only upon completion of

[Defendant OES'] scope of work and its submission of a final invoice."  ECF

No. 25 at 23 (citing ECF No. 25-3 at 3 ¶ 1.4; ECF No. 25-1 at 3 ¶ 10).  Plaintiff

states that, based on invoices Defendant OES submitted, Plaintiff has withheld

$166,077.81.  *Id.* (citing 25-5 at 1).  Plaintiff also states that the unpaid balance on

the Subcontract is $173,344.56.  *Id.*  Plaintiff thus asserts that any damages

awarded should be offset by the total of these two items, $339,422.37[1]

($166,077.81 + $173,344.56).  *Id.*

    D.    Total Damages

    The Court summarizes its foregoing findings as follows:

| Description | Amount |
|---|---|
| Vibrance (materials supplier) | $174,024.66 |
| Coconut (remediation work) | $531,999.92 |
| Coconut (completion work) | $309,420.82 |
| EKAV (completion work) | $52,655.43 |
| Subcontract withholding & unpaid amounts | ($339,422.37) |
| **TOTAL** | **$728,678.46** |

    The Court finds and recommends that the district court award Plaintiff

damages in the amount of $728,678.46.

IV.    Attorneys' Fees and Costs

    Plaintiff also requests an award for attorneys' fees and costs incurred in

connection with this action.  ECF No. 25 at 27–34.  Federal Rule of Civil

Procedure 54(d) governs Plaintiff's request.  Regarding Plaintiff's request for

attorneys' fees, Rule 54(d) requires the moving party to, among other things,

"specify the judgment" that entitles the movant to an award.  Fed. R. Civ. P.

54(d)(2)(B)(ii).  The district court has not yet entered a judgment in this case.  The

---

[1]  Plaintiff appears to have incorrectly calculated this amount in the memorandum
in support of the Motion as $339,422.38.  ECF No. 25 at 23, 24.

Court thus finds and recommends that the district court deny Plaintiff's request for attorneys' fees as premature.

Plaintiff contends that it is entitled to an award of costs pursuant to Hawaii Rule of Procedure 54 and Hawaii Revised Statutes § 607-9. ECF No. 25 at 26–27, 33–34. Like its request for attorneys' fees, however, Plaintiff's request for costs is governed by Federal Rule of Civil Procedure 54, as well as Rule 54.1 of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules."). *See Wetsel v. Ass'n of Apartment Owners of One Waterfront by Towers by & Through Its Bd. of Dirs.*, CIV. NO. 22-00041 DKW-WRP, 2022 WL 18586940, at *5 (D. Haw. Nov. 7, 2022), *adopted by* 2023 WL 315700 (D. Haw. Jan. 19, 2023) ("To the extent Defendant sought an award of taxable costs, Defendant was required to file a Bill of Costs in accordance with the requirements of Rule 54(d)(1), Local Rule 54.1, and 28 U.S.C. § 1920."). Local Rule 54.1 provides, in relevant part: "The party entitled to costs shall be the prevailing party *in whose favor judgment is entered . . . .*" LR54.1(a) (emphasis added). Because no judgment has been entered yet, the Court finds and recommends that the district court deny Plaintiff's request for costs as premature.

The Court further recommends that the district court deny Plaintiff's request for attorneys' fees and costs without prejudice. The Court notes that Count I against Defendant OES is the only claim for which this Court is recommending

28

that the district court grant default judgment.  If the district court adopts this

Court's findings and recommendations herein, Plaintiff will not have prevailed on

Counts II through X against Defendant OES.  In addition, Plaintiff's claims against

Defendant Johnson will remain pending.  Thus, if Plaintiff elects to file a new

request for attorneys' fees and/or costs, Plaintiff must specify the judgment, as

defined in Rule 54(a), that serves as the basis for its request.  *See* Fed. R. Civ. P.

54(a), (b).

CONCLUSION

Based on the foregoing, the Court FINDS AND RECOMMENDS that the

district court DEFER ruling on Plaintiff Elements of Hospitality, Inc.'s Motion for

Default Judgment (ECF No. 25) ("Motion") as to Plaintiff's claims against

Defendant Johnson until the bankruptcy stay under 11 U.S.C. § 362 has been lifted.

The Court further FINDS AND RECOMMENDS that the district court

GRANT IN PART AND DENY IN PART the Motion as to Plaintiff's claims

against Defendant OES.  Specifically, the Court RECOMMENDS that the district

court GRANT default judgment in favor of Plaintiff and against Defendant OES as

to Count I and award Plaintiff damages in the amount of $728,678.46.  The Court

RECOMMENDS that the district court DENY Plaintiff's request for default

judgment against Defendant OES as to Counts II through X.  In addition, the Court

RECOMMENDS that the district court DENY Plaintiff's request for attorneys'

fees and costs as premature.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, March 17, 2025.

Kenneth J. Mansfield
United States Magistrate Judge

*Elements of Hosp., Inc. v. Oahu Elec. Servs., LLC, et al.*, Civil No. 24-00214 KJM; Findings and Recommendation Regarding Plaintiff Elements of Hospitality, Inc.'s Motion for Default Judgment